VIRGINIA:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| MATTRESS CLEARANCE CENTER OF MORGANTOWN LLC, | ) ) ) |
| MATTRESS CLEARANCE CENTER OF ALTOONA LLC, | ) ) ) |
| SEDONA 66, INC. dba CROWES MATTRESS CLEARANCE CENTER OF LAFAYETTE INDIANA, | ) ) ) ) ) Case No. 7:19cv452 |
| CRAIG JEFFREY, KENTON KELLER, PATRICIA KELLER, and JERRY CROWE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MCCOA, LLC, | ) ) |
| Serve:<br>Kathleen Bauer, Registered Agent<br>1119 Majestic Oak Dr.<br>Forest, VA 24551 | ) ) ) ) ) |
| BRAD BAUER dba MATTRESS CLEARANCE CENTER OF TUPELO, | ) ) ) |
| Serve:<br>Brad Bauer<br>1715 McCullough Blvd B<br>Tupelo, MS 38801 | ) ) ) ) ) |
| MATTRESS CLEARANCE CENTER OF VIRGINIA LLC, | ) ) ) |
| Serve:<br>Amy Erb, Registered Agent<br>1317 Rock Haven Rd<br>Goode, VA 24556 | ) ) ) ) |

| | )|
|---|---|
|KATHLEEN BAUER,| )|
| | )|
|Serve:| )|
|Kathleen Bauer| )|
|1119 Majestic Oak Dr.| )|
|Forest, VA 24551| )|
| | )|
|DAN BAUER, and| )|
| | )|
|Serve:| )|
|Dan Bauer| )|
|1119 Majestic Oak Dr.| )|
|Forest, VA 24551| )|
| | )|
|AMY ERB| )|
| | )|
|Serve:| )|
|Amy Erb| )|
|1317 Rock Haven Rd| )|
|Goode, VA 24556| )|
| | )|
|Defendants.| )|
| | )|

# COMPLAINT

## PARTIES

1. Plaintiff Mattress Clearance Center of Morgantown LLC ("MCC Morgantown") is a Pennsylvania limited liability company selling mattresses and related goods.

2. Plaintiff Mattress Clearance Center of Altoona LLC ("MCC Altoona") is a Pennsylvania limited liability company selling mattresses and related goods.

3. Plaintiff Sedona 66, Inc. dba Crowes Mattress Clearance Center of Lafayette Indiana ("MCC Lafeyette") is an Indiana Corporation selling mattresses and related goods.

4. Defendant MCCOA, LLC ("MCC America") is a Virginia limited liability company that has executed a standardized "Dealership Agreement" with MCC Morgantown, MCC Altoona, and MCC Lafayette (collectively, the "Dealers").

5. Each Dealership Agreement between MCC America and each Dealer is identical in their terms, varying only in their execution dates and parties.

6. Each Dealership Agreement between MCC America and each Dealer have not yet expired.

7. The documents attached as Exhibits, A, B, and C are true and accurate copies of the Dealership Agreements between MCC America and each Dealer.

8. Contemporaneously with the execution of each Dealership Agreement, MCC America also executed with each Dealer a standardized "Noncompetition and Nonsolicitation Agreement," with each document having identical terms and varying only in their execution dates and parties.

9. Each "Noncompetition and Nonsolicitation" Agreement between MCC America and each Dealer have not yet expired.

10. The document attached as Exhibits D, E, and F are true and accurate copies of the Noncompetition and Nonsolicitation Agreements between MCC and each Dealer.

11. Plaintiff Craig Jeffrey signed the previously described Dealership Agreement and Noncompete and Nonsolicitation Agreement on behalf of MCC Morgantown.

12. Plaintiffs Kenton Keller and Patricia Keller (neé Rhodes) signed the previously described Dealership Agreement and Noncompete and Nonsolicitation Agreement on behalf of MCC Altoona.

13. Plaintiff Jerry Crowe signed the previously described Dealership Agreement and Noncompete and Nonsolicitation Agreement on behalf of MCC Lafayette.

14. Defendant Brad Bauer is an MCC America dealer operating as Mattress Clearance Center of Tupelo ("MCC Tupelo") in Tupelo, Mississippi.

15. Brad Bauer is the son of Kathleen and Dan Bauer, who are members of and who actively manage and operate MCC America.

16. Defendant Mattress Clearance Center of Virginia, LLC ("MCC Virginia") is a Virginia limited liability company operating in Lynchburg, Virginia, Franklin County, Virginia, and Bedford County, Virginia.

17. Defendant Amy Erb ("Erb") is a member of MCC Virginia, actively manages and operates MCC Virginia, and is the daughter of Kathleen and Dan Bauer.

## JURISDICTION AND VENUE

18. This is a civil action seeking damages from MCC America for fraud, for exerting undue influence in violation of the Virginia Retail Franchising Act, and for engaging in an unlawful business conspiracy in violation of Va. Code § 18.2-499 and -500; a declaration that the Dealership Agreements and Noncompete and Nonsolicitation Agreements are not enforceable due to lack of consideration or unconscionability; a declaration that MCC America otherwise has no claim against Plaintiffs for breach of contract; and other relief. It also seeks damages against MCC Tupelo, MCC Virginia, and Erb as co-conspirators in the unlawful business conspiracy with MCC America.

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 because the amount in controversy exceeds $75,000 for the fraud, Virginia Retail Franchising Act, and business conspiracy claims recited herein and because diversity of citizenship exists between the parties. It also has subject matter jurisdiction to the extent the Dealers ask the Court to declare that it is not liable for breach of contract to MCC America, with MCC America asserting damages in excess of $75,000. This Court has

4

supplemental jurisdiction over the remaining claims in this suit pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over Defendant MCC America because (1) it is a creation of, has its principal place of business in, and has a registered office in the Commonwealth of Virginia; and (2) both the Dealership Agreement and the Noncompete and Nonsolicitation Agreements make a court of competent jurisdiction in either the Western District of Virginia or in Roanoke County the exclusive jurisdiction for resolving the disputes.

21. Personal jurisdiction exists over Defendants MCC Virginia and Erb because they reside in Virginia and because the wrongs alleged with respect to these Defendants occurred in Virginia.

22. Personal jurisdiction exists over Defendant MCC Tupelo because the wrongs alleged occurred in Virginia.

23. Venue is proper in this District.

**FACTS**

24. MCC America is a business located in Bedford County, Virginia that sells mattresses and related goods at wholesale to other businesses, like the Dealers, and which also sells allegedly proprietary information MCC America claims reflects valuable know-how and trade secrets to facilitate the sale of these goods at retail.

25. MCC America does not manufacturer any goods itself, but instead purchases goods from other well-known manufacturers and adds its own private label to the goods.

26. MCC America tells potential dealers that by joining its system, it can give wholesale pricing better than the potential dealer could obtain directly from the underlying

5

manufacturer because MCC America can place orders at a higher volume and thereby receive a discount from the manufacturer.

27. More specifically, MCC America makes several pricing-related claims to its prospective dealers, to induce them to become a part of their dealership network, claiming, according to its attorney, that "[it] reaches agreements with its suppliers to offer private label [p]roducts at competitive pricing that the dealers cannot achieve on their own, buying individually from a supplier. It's the aggregation of numerous orders from numerous dealers in the [MCC America] network that enables this collective purchasing power to provide private label [p]roducts to dealers to sell at more competitive market prices than competitors." (*See* Ex. G).

28. MCC America, including MCC representatives Cory Bauer, Kathleen Bauer, Dan Bauer, and Brad Bauer (who has acted both as an agent of MCC America and as a dealer), made such claims to each of the Dealers, intending to induce the Dealers into entering into the agreements that are the subject of this suit and to obtain substantial payments from each Dealer for goods sold to them.

29. MCC America's written Dealership Agreement contains no term concerning the absolute or relative price it will give to its dealers, despite the price-related representations it makes that are intended to induce a business to become a dealer.

30. MCC America also tells prospective dealers that by joining the system, MCC America will provide valuable know-how and trade secrets it owns that will assist the dealer in making sales and running a successful business.

31. MCC America made such statements to each of the Dealers, intending to induce the Dealers into entering into the agreements that are the subject of this suit and to obtain substantial payments from each Dealer for goods sold to them.

32. MCC America provides a so-called "Playbook," along with other documents, providing sales techniques, a sales script, social media marketing strategies, and other supposedly proprietary information that MCC America prescribes for the sale of its goods by its dealers, including each of the Dealers here.

33. MCC America specifically directs its dealers to adopt the name "Mattress Clearance Center of [geography]" for selling its goods.

34. MCC America specifically directs its dealers to adopt certain trade dress, including by directing the dealers to use a specific color of paint from a specific paint manufacturer.

35. MCC America has four tiers of pricing for its dealers based on the length of time a dealer is in the network, starting with "Silver" pricing for newer dealers and progressing to "Gold," "Platinum," and "Presidential" for older dealers, with Silver being the most expensive per unit and Presidential being the least expensive per unit.

36. Even with these tiers, which are intentionally designed to make dealers believe they are getting better pricing compared to normal market wholesale prices directly from the manufacturer, MCC America has gradually increased the price paid for goods it sold to the Dealers no matter the tier of the Dealer, to the point where, unbeknownst to the Dealers, they were paying a higher price to MCC America than if they had purchased the goods directly from the underlying manufacturer, causing substantial monetary damage to the Dealers.

37. Around November 2018, MCC America attempted to alter the terms of the Dealership Agreement with each Dealer by demanding they each physically sign an "Addendum," which MCC America said would, among other things, replace the length of the Dealer Agreement with a six year term from an original three year term, would require the Dealers to protect confidential information and trade secrets belonging to third parties, and would require the Dealers to return or destroy the "Playbook."

38. The document attached as Exhibit H is a true and accurate copy of the Addendum.

39. The Dealers told MCC America they refused to sign such an Addendum.

40. Around December 2018, MCC America attempted to obtain agreement to the Addendum from the Dealers by incorporating the Addendum into a clickwrap agreement in their online product ordering system, thereby requiring the Dealers to accept the Addendum before they could purchase any more products.

41. MCC America created the Addendum because it had settled two lawsuits in the U.S. District Court for the Southern District of Ohio, Case No. 2:17-cv-00746-EAS-EPD, and the U.S. District Court for the Western District of Virginia, Case No. 7:2017-cv-00505, each with Retail Services Systems, Inc. ("RSS"), in which RSS alleged that MCC America had misappropriated its trade secrets and sold or otherwise revealed the secrets to at least 35 dealers throughout the United States, including the Plaintiff Dealers.

42. In communications with dealers in its network around December 2018, MCC America specifically explained that the "Playbook . . . was the main issue that got [MCC America] into trouble [with RSS] as well as where the knowledge and experience for what we do came from. In our agreements we call it confidential information. RSS calls it proprietary. No difference."

43. Around the same time, MCC America stated that it needed all dealers to sign the Addendum or it would take "additional action/steps for compliance to be achieved by all active dealers."

44. The Dealers refused to sign the clickwrap Addendum altering the Dealership Agreement, or related alterations to the Noncompete and Nonsolicitation Agreements, instead demanding through counsel that MCC America sell products in accordance with the original agreements. (Ex. I).

45. Exhibit I is a true and accurate copy of this letter.

46. MCC America, through counsel, replied that under the Dealership Agreement, it "'is not obligated to sell any [p]roducts to Dealer,'" and that further, the Agreement permitted it to "'cause the order placement process on [its] website to require Dealer's agreement to additional or replacement terms, and such additional or replacement terms will be part of the Contract, even if they conflict with this Agreement.'" (*See* Ex. G, quoting Exs. A, B, and C at Art. 4 §§ b and c).

47. At the same time, the Dealership Agreement also provides that the Dealers are each supposed to maintain a minimal inventory of MCC America products necessary to meet demand in each of the Dealer's territories, (Exs. A, B, and C at Art. 2e) and that they are supposed to use best efforts to promote the sale of the products in the territory (Exs. A, B, and C at Art. 2d).

49. The Dealership Agreement and the Noncompete and Nonsolicitation Agreement also provide that the Dealers may not buy competing products or sell those products in their territories.

50. Hence, MCC purports to have an "agreement" that obligates a Dealer to purchase products from MCC America, but it does not obligate MCC America to sell. If MCC America does sell, it may sell at any price and on any changing terms it wishes, and the Dealer must buy, lest the Dealer "breach" its supposed obligation to purchase a minimal level of products from MCC America and to exclusively promote and sell those products.

51. This scheme also provides MCC America with immense leverage to impose the contractual obligations arising from its settlement with RSS, to indefinitely extend the duration of its relationship with a Dealer, and to otherwise extract whatever it wants from a Dealer, with the Dealer facing no apparent choice but to bend to its master's wishes or face financial ruin.

52. Affirming this onerous state of affairs, MCC America, through counsel, sent a demand letter to the Dealers on May 14, 2019, alleging that they have breached the agreements by failing to purchase products from MCC America. The demand letter claims combined damages in excess of $350,000, further trebled based on an alleged violation of the Virginia business conspiracy statute, and with a demand for costs and attorneys' fees. (Ex. J).

53. Exhibits G and J are true and accurate copies of letters written and sent by counsel on behalf of MCC America.

## COUNT I
## FRAUD

54. The Dealers hereby incorporate paragraphs 1-53 by reference.

55. MCC America falsely claimed to the Dealers that by joining the MCC America network, MCC would sell to them confidential, proprietary information belonging to MCC America, when in fact that information belonged to RSS or was not proprietary to anyone at all, as MCC America has alleged as a defense in its lawsuits with RSS.

56. MCC intentionally, knowingly, willfully, and maliciously made these false misrepresentations, since its agents took information and documents it acquired from another business, and since it knew of past lengthy litigation establishing these facts.

57. MCC made these misrepresentations with the intent to mislead the Dealers into becoming a part of the network and purchasing mattress products from MCC America at an inflated price.

58. In the alternative, MCC made its misrepresentations innocently, as required to establish constructive fraud.

59. The Dealers had no knowledge of these misrepresentations and reasonably relied on the representations by MCC America.

60. The Dealers were damaged in that they became captives in a predatory scheme designed to extract inflated prices beyond the price the Dealers would have paid to the underlying manufacturer, and thereby paid a price higher than what they would have paid to the underlying manufacturer.

61. The Dealers suffered damages when MCC America refused to sell to the Dealers without changing their terms starting in about December 2018 and continuing through the present.

62. MCC America is liable to MCC Morgantown for at least $110,000, comprising the amount MCC America overcharged MCC Morgantown, plus at least $80,000 in lost

profits MCC Morgantown incurred from about December 2018 through the present after MCC America's refusal to sell, for total damages of at least $190,000.

63. MCC America is liable to MCC Altoona for at least $90,000, comprising the amount MCC America overcharged MCC Altoona, plus at least $70,000 in lost profits MCC Altoona incurred from about December 2018 through the present after MCC America's refusal to sell, for total damages of at least $160,000.

64. MCC America is liable to MCC Lafayette for at least $190,000, comprising the amount MCC America overcharged MCC Lafayette.

65. MCC America is liable to each Dealer for punitive damages for its fraud, in the amount of $350,000 for each distinct Dealer claim.

66. MCC America is liable to each Dealer for its attorneys' fees as permitted for fraud claims and as provided for in the agreements at issue.

## COUNT II
## VIOLATION OF VIRGINIA RETAIL FRANCHISING ACT

67. The Dealers hereby incorporate by reference paragraphs 1-53.

68. The business relationship between the Dealers and MCC America is a franchise as defined in Va. Code § 13.1-559 in that MCC America (a) granted each Dealer the right to engage in the business of offering, selling or distributing goods or services at retail under the "Playbook" and other marketing documents, scripts, and strategies MCC America prescribed; (b) the operation of each Dealer's business pursuant to such plan or system is substantially associated with MCC America's trademark or trade name, to wit, the phrase "Mattress Clearance Center of" and specific trade dress including a specific paint color dictated by MCC America; and (c) each Dealer is required to pay, at least indirectly, a fee

12

of at least $500 by the requirement that the Dealer maintain a minimum inventory in its territory or otherwise through the inflated prices MCC America charges to each Dealer.

69. MCC America has exerted undue influence over each Dealer, in violation of Va. Code § 13.1-564 through the structure of its "agreements," by inserting new terms into a clickwrap agreement, and by threatening to gain "compliance" with its settlement with RSS as previously described.

70. Under Va. Code § 13.1-571, MCC America is liable to each Dealer for damages each of them suffered after MCC America refused to sell to each of them in December 2018 absent new terms.

71. MCC America is liable to MCC Morgantown for compensatory damages of at least $80,000 on this basis.

72. MCC America is liable to MCC Altoona for compensatory damages of at least $70,000 on this basis.

73. MCC America is liable to MCC Lafayette for compensatory damages of at least $0 on this basis.

74. MCC America is also liable to each Dealer for their attorneys' fees as set forth in Va. Code § 13.1-571 and as provided for in the agreements at issue.

# COUNT III
# UNLAWFUL CONSPIRACY TO HARM TRADE OR BUSINESS
# IN VIOLATION OF VA CODE §§ 18.2-499 and -500

75. The Dealers hereby incorporate by reference paragraphs 1-53.

76. On information and belief, MCC America and RSS agreed, through their settlement agreement, to impose the Addendum on each Dealer, thereby leaving each Dealer with the Hobson's choice of either accepting new onerous terms or having no inventory to sell.

77. On information and belief, MCC America and RSS did so willfully and maliciously with the knowledge that this perverse choice would damage each Dealers' business, as it in fact did.

78. Further, the Dealers have overheard Amy Erb tell her brother, Brad Bauer, and others, that they and their operations, MCC Virginia and MCC Tupelo, respectively, receive favorable pricing that no other dealer receives.

79. On information and belief, Amy Erb, MCC Virginia, Brad Bauer/MCC Tupelo, Kathleen Bauer, Dan Bauer, and/or MCC America have conspired to engage in a fraudulent, deceptive scheme to inflate the pricing of products to other dealers in the network so that they can, among other things, give substantially lower prices to Erb, MCC Virginia, and Brad Bauer/MCC Tupelo, by deceiving the Dealers by representing that all dealers on the same tier receive the same pricing.

80. MCC America, Kathleen Bauer, Dan Bauer, Brad Bauer/MCC Tupelo, MCC Virginia, and Amy Erb are liable to MCC Morgantown for at least $190,000 for the wrongs described, trebled to $570,000 pursuant to Va. Code § 18.2-500.

81. MCC America, Kathleen Bauer, Dan Bauer, Brad Bauer/MCC Tupelo, MCC Virginia, and Amy Erb are liable to MCC Altoona for at least $160,000 for the wrongs described, trebled to $480,000 pursuant to Va. Code § 18.2-500.

82. MCC America, Kathleen Bauer, Dan Bauer, Brad Bauer/MCC Tupelo, MCC Virginia, and Amy Erb are liable to MCC Lafayette for at least $190,000 on this basis, trebled to $570,000 pursuant to Va. Code § 18.2-500.

83. MCC America, Kathleen Bauer, Dan Bauer, Brad Bauer/MCC Tupelo, MCC Virginia, and Amy Erb are liable to each Dealer for all costs and attorneys pursuant to Va. Code § 18.2-500 and as provided for in the agreements at issue.

## COUNT IV
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
## NO CONSIDERATION OR UNCONSCIONABLE

84. The Dealers hereby incorporate by reference paragraphs 1-53.

85. MCC America has said, through counsel, that it will file suit against the Dealers if they do not "cure" an alleged "breach" of their Dealership Agreements and Noncompete and Nonsolicitation Agreements. (Ex. J).

86. The Dealers will not "cure" as demanded.

87. MCC America's demand letter presents a justiciable question ripe for review under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

88. Each Dealer is entitled to a declaration under 28 U.S.C. § 2201(a) that no breach has occurred because no enforceable contract exists because the Dealership Agreement and the Noncompete and Nonsolicitation Agreements due to a lack of consideration.

89. In the alternative, each Dealer is entitled to a declaration under 28 U.S.C. § 2201(a) that no enforceable contract exists because the Dealership Agreement and the Noncompete and Nonsolicitation Agreements are unconscionable.

90. Each Dealer is further entitled to an injunction prohibiting MCC America from enforcing the agreements as provided by U.S. Code § 2202.

91. Each Dealer is entitled to all costs and attorneys' fees as provided for in the agreements at issue.

## COUNT V
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
## UNLAWFUL RESTRICTIVE COVENANTS AND NO DAMAGES

92. The Dealers hereby incorporate by reference paragraphs 1-54 and paragraphs 85-92.

93. Assuming *arguendo* the agreements have consideration and are conscionable, the Noncompete and Nonsolicitation Agreements are unenforceable because they are restrictive covenants that are not narrowly tailored to the legitimate business interests of MCC America, since, among other reasons, they are potentially boundless in duration, they are not limited to any job function of the dealers, and they are directed toward independent contractors rather than employees.

94. Assuming *arguendo* the agreements have consideration and are conscionable, the Dealership Agreements do not obligate MCC America to sell anything, and therefore lost sales cannot be the measure of its damages in any alleged breach. Since the agreement does not mandate a sale, there can be no damage for supposed lost sales from a "breach."

95. Each Dealer is entitled to a declaration under 28 U.S.C. § 2201(a) that the Noncompete and Nonsolicitation Agreements are unenforceable and that MCC America has no claim for breach of contract because it has no damages.

96. Each Dealer is further entitled to an injunction prohibiting MCC America from enforcing the Noncompete and Nonsolicitation Agreements as provided by U.S. Code § 2202.

97. Each Dealer is entitled to all costs and attorneys' fees as provided for in the agreements at issue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Court order the following:

(a) an award of compensatory damages of $570,000 to MCCOA Morgantown, $480,000 to MCCOA Altoona, and $570,000 to MCCOA Lafayette;

(b) an award of punitive damages of $350,000 to MCCOA Morgantown, $350,000 to MCCOA Altoona, and $350,000 to MCCOA Lafayette;

(c) a declaration that neither agreement at issue is enforceable against the Dealers or their respective signatories, members, owners, employees, or agents, including Craig Jeffrey, Patricia Keller, Kenton Keller, and Jerry Crowe;

(d) a declaration that MCC America has suffered no damages by an alleged breach of contract by the Dealers, and that neither the dealers nor their agents are liable for the same;

(e) all necessary and proper injunctive relief to carry out the declarations in (c) and (d);

(f) an award of all costs and attorneys' fees;

(g) an award of post-judgment interest; and

(h) any other relief the Court deems just and proper.

Dated: June 14, 2019					Respectfully submitted,
							BY COUNSEL

							/Andrew P. Connors/
							Andrew P. Connors, Esq. (VSB No. 80248)
							Rachel V. Brenke, Esq. (VSB No. 90446)
							Connors & Brenke PLLC
							2486 Rivermont Ave., Suite 102
							Lynchburg, VA 24503
							Phone: 540-553-8149
							Fax: 540-301-6460
							andrew@connorsandbrenke.com
							rachel@connorsandbrenke.com

							*Counsel for Plaintiffs*